UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BECKY E.S. GAINES, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner of ) <br> the Social Security Administration, ) <br> ) <br> Defendant. ) <br> ) | Cause No. 1:09-cv-1405-WTL-TAB |

## ENTRY ON JUDICIAL REVIEW

Pursuant to 42 U.S.C. § 405(g), Plaintiff Becky E.S. Gaines seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, rules as follows.

## PROCEDURAL HISTORY

Gaines initially applied for DIB and SSI in August 2005, alleging that she became disabled in October 2004 due to right shoulder problems, knee problems, neck problems, and right leg problems. After her applications were denied initially and on reconsideration, Gaines requested and was granted a hearing before Administrative Law Judge ("ALJ") James R. Norris. At an initial hearing, conducted on October 8, 2008, the ALJ heard testimony from Gaines, two medical experts, and a vocational expert. Because the vocational expert testified that she was unable to determine from the record how Gaines's past relevant work as a unit secretary should be characterized, the ALJ adjourned the hearing in order to obtain a written job description from

Gaines's former employer. A supplemental hearing was then held on April 20, 2009, at which the ALJ heard testimony from a medical expert and a second vocational expert–who had received and reviewed the requested job description–as well as brief testimony from Gaines herself. Gaines was represented by counsel at both hearings.

In a decision dated May 1, 2009, the ALJ denied Gaines's application for benefits. After the Appeals Counsel denied review of the ALJ's decision on September 10, 2009, Gaines filed this timely appeal.

## **APPLICABLE STANDARD**

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the

---

[1]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## THE ALJ'S DECISION

Applying the five-step analysis, the ALJ found at step one that Gaines had not engaged in substantial gainful activity since her alleged onset date of October 13, 2004. At step two, the ALJ determined that Gaines had the following severe impairments: degenerative disc disease of the lumbar spine, bilateral osteoarthritis of the knees, degenerative joint disease of the right shoulder,

3

left ulnar neuropathy at the elbow, and obesity.  At step three, the ALJ determined that the Gaines did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ then found that Gaines had the residual functional capacity to perform:

> the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  The claimant can lift and/or carry up to ten pounds occasionally and up to five pounds frequently and can occasionally lift or carry articles like docket files, ledgers, and small tools.  She can stand and/or walk up to a total of two hours in an eight hour day and can sit a total of six hours in an eight hour day.  She can use her bilateral hands on a frequent basis but not on a constant basis.  She can occasionally climb ramps and stairs, but cannot climb ropes, ladders, or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She cannot work at unprotected heights or around dangerous and moving machinery.  She should avoid concentrated exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts, gases, and poor ventilation.

The ALJ determined at step four that, given her residual functional capacity, Gaines was capable of performing her past relevant work as a unit secretary as it is generally performed in the national economy and therefore she was not disabled as defined by the Act.

## **DISCUSSION**

Gaines advances several objections to the ALJ's decision, each of which is addressed, in turn, below.

### *Incomplete Hypothetical Questions*

Gaines initially argues that the ALJ's step four determination is not supported by substantial evidence because it is based upon vocational expert Gail Corn's response to an incomplete hypothetical question.  Actually, Gaines's characterization of the testimony involved is charitable, in that the ALJ did not actually formulate a hypothetical question for the vocational expert at all.  Rather, the following exchange occurred during the first hearing:

4

> Q: Ms. Corn, you've been here . . . during the hearing so far?
>
> A: Yes.
>
> Q: And you heard Dr. Hutson's testimony with respect to his review of the file?
>
> A: Yes.
>
> Q: Now, you heard what he described, I'm not going to try and duplicate it, because I probably couldn't do it any way. But with, with the limitations that Dr. Hutson gave would Ms. Gaines be able to return to her past work as a secretary?
>
> A: I believe so, yes.

Record at 522-23. Dr. Hutson's testimony was that he would "definitely limit her to sedentary work" based upon the impairments she had in her "low back and the lumbar spine areas mainly." *Id.* at 517.[2] Essentially, then, the vocational expert testified that if Gaines could perform sedentary work then she could perform her past work as a secretary. However, under questioning from Gaines's attorney, the vocational expert testified that it was not clear whether Gaines's past relevant work fell into the sedentary or light category:

> Q: And then my other question is, are all secretarial positions equal in that are all of them classified as sedentary? I'm just thinking of a hospital situation as opposed to an office situation. Is a hospital secretary light per the Dictionary of Occupational Titles?
>
> A: Well I think that the problem is classifying the jobs we can give them several titles. . . . And some of what she described would almost be more like what I would typically consider a general office clerk. But in the secretarial area, the majority of jobs are sedentary, although there is a significant number of light. And then when you get into things like general office clerks you find more of a split between sedentary and light.

*Id.* at 536. Based on this testimony, the ALJ determined that the best course of action was to

---

[2]Dr. Hutson also discussed Gaines's ability to use her left hand; that discussion is irrelevant to the issues raised in this appeal.

hold the record open to obtain a job description from Gaines's former employer so that the vocational expert could accurately characterize her past relevant work.

After the job description was obtained a supplemental hearing was held. After Dr. Hutson reaffirmed his testimony that Gaines could perform sedentary work, vocational expert Robert Barber testified that pursuant to the Dictionary of Occupational Titles ("DOT"), Gaines's past relevant work as a hospital secretary would be characterized as "[s]edentary, skilled, with an SVP [specific vocational preparation] of six." Gaines's attorney then examined Barber:

> Q: Is a hospital secretary and unit secretary, are they vocationally the same job?
>
> A: Well yeah, they're in the classification of general office clerk. . . . There is a unit clerk, there's medical records clerk, and there's a medical clerk, that kind of encompasses, probably less skill level than a secretary would.
>
> Q: Okay. Because we had –that was one of the things that we had submitted after the hearing was Exhibit J, which was the description from St. Francis of a unit secretary. Did you get a chance to review that?
>
> A: Unit – secretary, there's all kinds of secretaries. They're all sedentary, skilled. . . . It could be medical secretary, regular secretary, school secretary, and they all do pretty much the same activities. . . . In the DOT there's no secretary job that's classified other than sedentary.

*Id.* at 544. Upon follow-up questioning from the ALJ, Barber further testified that the job description provided by Gaines's previous employer was "pretty much the definition of most secretarial jobs" and that the job description was "in line" with the DOT. *Id.* at 546.

Gaines argues that the ALJ improperly relied on the vocational experts' testimony because that testimony was based on an inaccurate picture of her residual functional capacity. Specifically, while the ALJ found that Gaines could not work around dangerous and moving machinery and should avoid concentrated exposure to humidity, fumes, odors and gases, neither

6

vocational expert was asked whether these limitations would affect Gaines's ability to perform her past relevant work. Neither were the vocational experts asked to address the impact of Gaines's use of a cane.

Gaines is correct that "'[o]rdinarily, a hypothetical question to the vocational expert must include all of the limitations supported by medical evidence in the record.'" *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002)). This is because "[i]t is important for the vocational expert to understand the full extent of the applicant's disability so that the expert does not declare the applicant capable of undertaking work in the national or local economy that the applicant cannot truly perform." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). The exception to this the general rule is that "[t]he hypothetical need not include every physical limitation, provided that the vocational expert had the opportunity to learn of the applicant's limitations through, for example, an independent review of the medical records or through other questioning at the hearing." *Id.* For this exception to apply, however, " we must have some amount of evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations." *Id.*

There is absolutely no indication in the record in this case that either vocational expert was aware that Gaines used a cane and was required to avoid concentrated exposure to humidity, fumes, odors and gases. The Commissioner implicitly concedes that fact, but argues that it does not matter because the ALJ "was entitled to rely on the DOT in determining whether Plaintiff retained the residual functional capacity to perform the job of hospital secretary as generally performed" and that "[u]nder the DOT, the job of hospital secretary does not involve exposure to weather; extreme cold, heat, or humidity; atmospheric conditions; toxic caustic chemicals;

7

moving mechanical parts; or high exposed places." Commissioner's Brief at 9, 10. In addition, "balancing is not a required activity in the position of hospital secretary" pursuant to the DOT, and therefore Gaines's use of a cane does not preclude her performance of that job. *Id.* at 10.

There are several problems with this argument. First, it does not appear that the ALJ made any independent determination based upon the DOT; rather, the analysis set forth in his decision is based on the testimony of the vocational experts. And that leads to the second problem: in addition to being based on incomplete information, the testimony of the vocational experts is less than clear and quite possibly contradictory. Vocational expert Barber testified that Gaines could perform her past relevant work as a "hospital secretary," but there is no "hospital secretary" listed in the DOT and Barber did not identify the particular position within the DOT that he believed equated with "hospital secretary." In his brief, the Commissioner points to the position of "medical secretary"; the Court agrees that is possibly–perhaps even likely–the position Barber was referring to, but that is only a guess,[3] and one that the Court is unwilling to rely upon given the other issues with the vocational expert in this case. For example, vocational expert Corn testified that "in the secretarial area, the majority of jobs are sedentary, although there is a significant number of light"; in contrast, vocational expert Barber testified that "[i]n the DOT there's no secretary job that's classified other than sedentary." In addition, Barber testified that the position of hospital secretary was "in the classification of general office clerk"; however, the position of general office clerk is classified as "light" work in the DOT, not sedentary.

The Court can affirm the Commissioner's decision only when there is substantial

---

[3]The lack of clarity on this issue is particularly frustrating in light of the fact that the supplemental hearing was held specifically for the purpose of resolving this issue.

evidence in the record to support it and the reasons for it are adequately articulated. In this case, that means that the record had to contain substantial evidence that supported the ALJ's finding that Gaines can perform her past relevant work in spite of all of her restrictions, including her use of a cane and the environmental restrictions included in her residual functional capacity, and the ALJ must have articulated what that evidence was. This did not happen here. Given the ALJ's explicit reliance on vocational expert testimony that was not entirely clear, not entirely consistent, and based upon incomplete information, the Court agrees with Gaines that remand is necessary.

### *Gaines's Ability to Stoop*

Gaines also argues that the ALJ erred in failing to explain his determination that she is capable of stooping occasionally in light of evidence to the contrary. Specifically, Gaines points to the fact that one doctor who examined her in October 2005 found that her lumbar forward flexion was limited to 40 degrees and another doctor who examined her in June 2007 found it was limited to 30 degrees and opined that she should "not do excessive bending." As the Commissioner points out, there is evidence that supports the ALJ's finding, including the report of a state agency reviewing physician who opined in January 2006 that Gaines could stoop occasionally and the report of another who was of the same opinion in April 2006, as well as a notation by a treating chiropractor in March 2008 that her "passive and active ranges of motion of the cervical, thoracic and lumbar spine were found to be within normal limits."

The ALJ did not explain in his decision why he concluded that Gaines could stoop occasionally despite the limited lumbar forward flexion found by two physicians. As Gaines points out, the evidence in her case is at least somewhat analogous to that in *Golembiewski v.*

9

*Barnhart*, 322 F.3d 912 (7th Cir. 2003). In that case, the court noted that an examining physician had found that the claimant "could rotate his neck only 60 degrees and that motion in his lower back was reduced to 40 degrees of flexion, 15 degrees of extension, and 10 degrees of tilting" and contrasted that finding with the state consulting physician's finding that he could stoop occasionally. The court found that the ALJ had improperly failed to address and resolve this conflict in his decision and that the error was significant since the ALJ found Golembiewski capable of performing light work which would require him to bend at the waist occasionally. The same problem exists in this case. If, in fact, the Commissioner is correct and the vocational experts' testimony means that Gaines's past relevant work is that of a medical secretary, the ALJ's finding that Gaines can stoop occasionally is critical because pursuant to the DOT that position requires occasional stooping. While the ALJ did state that he gave the chiropractor's opinion "great weight," he did not explain why he found that opinion more persuasive than others in the record. On remand, the ALJ should explain the evidentiary basis for his finding that Gaines is capable of stooping occasionally.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 03/09/2011

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification